UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  KENNETH DARYLE RODRIGUEZ,                    No. 11-10-14645 JA

Debtor.

---

DENISE COMSTOCK f/k/a DENISE RODRIGUEZ,

Plaintiff,

v.                                                    Adversary No. 10-1206 J

KENNETH DARYLE RODRIGUEZ,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on cross-motions for summary judgment.[1] The primary focus of this adversary proceeding is whether certain debt that arose in connection with divorce proceedings between the parties is a non-dischargeable domestic support obligation or a non-dischargeable property settlement.[2] Whether the debt is a non-dischargeable domestic support obligation under 11 U.S.C. § 523(a)(5) rather than a non-dischargeable property settlement under 11 U.S.C. § 523(a)(15) is significant because it will determine whether the debt is entitled to treatment as a priority claim under 11 U.S.C. § 507(a) in Defendant's Chapter 11 bankruptcy case.

---

[1] *See* Motion for Summary Judgment and Memorandum in Support ("Defendant's Motion for Summary Judgment") (Docket No. 5) and Plaintiff's Response to Motion for Summary Judgment and Cross Motion for Summary Judgment ("Plaintiff's Cross-Motion for Summary Judgment") (Docket No. 6).

[2] The Complaint to Determine Dischargeability of Debt ("Complaint") also asserts, alternatively, that the debt at issue is non-dischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). *See* Complaint, ¶ 16 - Docket No. 1. Because Defendant concedes that the debt at issue is non-dischargeable under 11 U.S.C. § 523(a)(15), it is not necessary to determine whether the debt is also non-dischargeable under 11 U.S.C. § 523(a)(2), (4), or (6). *Cf. May v. Cagan (In re Cagan),* 2010 WL 3853316, *1 (Bankr.D.N.M. Sept. 28, 2010)(declining to consider multiple non-dischargeability claims predicated on the same debt, noting that once the Court has determined that a particular debt is non-dischargeable, it is not necessary to consider whether the debt is non-dischargeable under another subsection of § 523(a)).

Defendant concedes that the debt is non-dischargeable under 11 U.S.C. § 523(a)(15), but asserts that the debt is not in the nature of support as a matter of law and requests the Court to enter summary judgment determining that the debt does not fall under 11 U.S.C. § 523(a)(5). Plaintiff asserts that because she will, in fact, use the money represented by the debt in this adversary proceeding to cover her living expenses, the obligation functions as support. Plaintiff requests the Court to grant summary judgment finding that the debt constitutes a non-dischargeable domestic support obligation under 11 U.S.C. § 523(a)(5).

After considering Defendant's Motion for Summary Judgment, Plaintiff's Response to Motion for Summary Judgment and Cross Motion for Summary Judgment (Docket No. 6), and Defendants' Response to Plaintiff's Cross Motion for Summary Judgment, the Affidavit of Kenneth Daryle Rodriguez, and the Affidavit of Denise Comstock, the Court finds that there exist genuine issues of material fact regarding the intent of the parties at the time of the divorce and the purpose the debt was intended to serve. These genuine issues of fact prevent the Court from granting summary judgment in favor of either party.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. In considering a motion for summary judgment, the Court must "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Wolf v. Prudential Inc. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990)).

Cross motions for summary judgment raise an inference that summary judgment may be appropriate. *In re Baines,* 337 B.R. 392 , 396 (Bankr.D.N.M. 2006). Nevertheless, before a Court may grant summary judgment, the Court must satisfy itself that the requesting party has independently satisfied the requirements of Rule 56(c). *See Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 998 (10th Cir. BAP 1997); *see also, Renfro v. City of Emporia,* 948 F.2d 1529, 1534 (10th Cir. 1991)(stating that a cross motion for summary judgment does not relieve the court of its obligation to determine if a genuine issue of material fact exists). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

A.  Plaintiff's Cross Motion for Summary Judgment Raises Factual Allegations not Pleaded in the Original Complaint

Plaintiff filed a Complaint to Determine Dischargeability of Debt ("Complaint") on December 13, 2010. The Complaint alleges, among other things, that: 1) the parties have participated in contentious divorce proceedings in the Second Judicial District Court for the State of New Mexico for the past six years; 2) the state court found Defendant in contempt of court and entered a judgment against Defendant on July 12, 2010 in the amount of $50,454.75, plus interest ("Judgment") based on Defendant's use of funds in a joint retirement account to the detriment of Plaintiff; 3) Plaintiff incurred costs and attorneys' fees in defending her right to receive funds from Defendant; and 4) "[a]ll obligations running from Defendant to Plaintiff related in any way to their divorce are not dischargeable" in Defendant's bankruptcy proceeding

3

under 11 U.S.C. §§ 523(a)(5) and (a)(15). *See* Complaint, ¶¶ 6, 7, 8, 12, and 13. Defendant filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 13, 2010.

Plaintiff's Cross-Motion for Summary Judgment asserts that there are four components to her claim: 1) the unpaid amount currently owed under the Judgment in the amount of $53,488.74; 2) an award of alimony in the amount of $2,632.00; 3) tuition for private school owed by Defendant directly to the Albuquerque Academy in the approximate current amount of $20,000.00; and 4) attorney's fees incurred in establishing and attempting to collect the first three components. *See* Plaintiff's Cross-Motion for Summary Judgment, p.2, ¶ 1. Plaintiff did not include specific factual allegations concerning the award of alimony and the debt for tuition in her Complaint, nor did Plaintiff file a motion to amend the Complaint to include these additional components of her claim. In considering a motion for summary judgment, the Court "may evaluate the pleadings both in terms of their content at the time of their submission and as they might be amended at some later date." 10A Wright, Miller and Kane, Federal Practice and Procedure, §2722 at 368 (1998).[3] Defendant concedes that the award of alimony constitutes a domestic support obligation, but points out that the state court did not award this debt until *after* Plaintiff filed the Complaint.[4] There is insufficient factual evidence before the Court from which to evaluate the nature of the debt representing tuition at the Albuquerque Academy. Consequently, summary judgment as to the award of alimony and tuition components of Plaintiff's claim is not appropriate. The Court will give Plaintiff an opportunity to amend the Complaint to add these additional components to her non-dischargeability claim.

---

[3] *See also, In re Zweibon,* 565 F.2d 742, 748 n. 20 (D.C. Cir. 1977)(stating that "it is now settled that the process of amendment may be initiated by presentation of an issue for the first time in a motion for summary judgment.")(citations omitted).

[4] *See* Defendant's Response to Plaintiff's Cross Motion for Summary Judgment, p. 2, ¶ 3. *See also,* Affidavit of Kenneth Rodriguez, ¶ 8 (stating that "[t]he alimony underpayment of $2,632 should be designat[ed] as support.").

4

B. <u>Defendant's Documentary Evidence Offered in Support of Summary Judgment Is Not Properly Authenticated</u>

In support of Defendant's Motion for Summary Judgment, Defendant submitted copies of the Partial Marital Settlement Agreement ("MSA"), the Final Decree of Dissolution of Marriage with Reservation of Jurisdiction ("Final Decree"), an Order entered in the parties' state court action on December 21, 2009 determining that Defendant cashed in various retirement accounts that were owned one-half by Plaintiff, Findings of Fact and Conclusions of Law entered by the state court in the parties' state court action on July 19, 2007, and Alimony Guidelines and Commentaries (Revised) issued by the Statewide Alimony Guideline Committee.[5] Only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.[6] Documentary evidence supporting summary judgment must be properly authenticated.[7] The Court may not consider documents not sworn or certified or otherwise authenticated as required by Fed.R.Civ.P. 56(e).[8] To be admissible, documents must be self authenticating, or authenticated by a sufficient affidavit or by other means satisfying the requirements of Rule 56(e).[9] The exhibits offered in support of Defendant's Motion for Summary Judgment fail to meet these requirements.

---

[5] *See* Exhibits A, B, C, D and E attached to Defendant's Motion for Summary Judgment.

[6] Fed.R.Civ.P. 56(e). *See also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n. 9 (9th Cir.1980)(observing that "only admissible evidence may properly be considered by a trial court in granting summary judgment.")(*citing United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir.1970)).

[7] *See Hammad v. Bombardier Learjet, Inc*., 192 F.Supp.2d 1222, 1228 (D.Kan. 2002)(stating that "the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated and attached to an affidavit meeting the requirements of Rule 56(e).")(citations omitted).

[8] *Id. See also, Caplan v. Yonks & Associates (In re Day),* 2008 WL 5191683, *3 (Bankr.D.N.M. Dec. 10, 2008), *aff'd,* 421 B.R. 602 (10th Cir. BAP 2009)(stating that "[u]ncertified copies of docket sheets from unrelated civil proceedings do not constitute admissible evidence for purposes of summary judgment."); *United States v. Novelli*, 381 F.Supp.2d 1125, 1128 (C.D. Cal. 2005)(stating that "[t]he Ninth Circuit has 'repeatedly held that unauthenticated documents cannot be considered on a motion for summary judgment.'")(quoting *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002)(collecting cases)).

[9] *Goguen v. Textron, Inc.,* 234 F.R.D 13, 16 (D.Mass. 2006).

5

The MSA, Final Decree, Order and Findings of Fact and Conclusions of Law attached to Defendant's Motion for Summary Judgment are not certified copies. Nor were the documents from the state court action between the parties nor the Alimony and Guidelines otherwise authenticated by an affidavit meeting the requirements of Rule 56(e). Plaintiff did not admit or rely on these documents in her Cross-Motion for Summary Judgment. To the contrary, Plaintiff's Cross-Motion for Summary Judgment asserts that Defendant failed to properly support his allegations of undisputed material fact in violation of Fed.R.Civ.P. 56. Consequently, the Court cannot consider these documents in ruling on Defendant's Motion for Summary Judgment.

C. <u>Genuine Issues of Material Fact Preclude Summary Judgment as to Whether the Debt Constitutes a Non-Dischargeable Domestic Support Obligation under 11 U.S.C. § 523(a)(5)</u>

Debts that constitute domestic support obligations[10] are not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(5). Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the language in 11 U.S.C. § 523(a)(5) to apply to

---

[10] "Domestic support obligation" is defined by 11 U.S.C. 101(14A), which provides:
> The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A) owed to or recoverable by—
>     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>     (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
>     (i) a separation agreement, divorce decree, or property settlement agreement;
>     (ii) an order of a court of record; or
>     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of colleting the debt.
> 11 U.S.C. § 101(14A).

"domestic support obligations" as defined in 11 U.S.C. § 101(14A), this change "did not change the standard for whether an obligation is in the nature of support." *Phegley v. Phegley (In re Phegley),* 443 B.R. 154, 157 (8th Cir. BAP 2011)(citation omitted). [11] It is, therefore, appropriate to continue to apply the same test for determining whether a debt is in the nature of support that was applicable under 11 U.S.C. § 523(a)(5) prior to the enactment of BAPCPA.[12]

Whether a debt is in the nature of support is made according to federal bankruptcy law, not state law.[13] In *Sampson v. Sampson (In re Sampson),* 997 F.2d 717 (10th Cir. 1993), the Tenth Circuit conducted a two-part inquiry to determine whether an obligation constituted a non-dischargeable support obligation: 1) what was the parties' shared intent regarding the nature of the obligation; and 2) what was the substance of the obligation. *Sampson,* 997 F.2d at 723. In ascertaining the shared intent of the parties, the labels ascribed to a particular debt in a marital settlement agreement or divorce decree are not determinative.[14] In ascertaining the substance of the obligation, the critical question is "'the function served by the obligation at the time of the divorce.'" *Sampson,* 997 F.2d at 725-726 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990). Factors used to determine the true nature of an obligation include: 1) the relative

---

[11] *See also In re Charlton,* 2008 WL 5539789, *5 (Bankr.D.Kan. Dec.3, 2008)(reasoning that even though the language in the Bankruptcy Code defining "domestic support obligation" is not identical to the language contained in 11 U.S.C. § 523(a)(5) prior to the enactment of BAPCPA, it is "consistent with the 'actual-support' requirement for alimony, maintenance and support debts under the prior law[.]").

[12] *Charlton,* 2008 WL 5539789 at *5 (acknowledging that courts have concluded that the law interpreting former 11 U.S.C. § 523(a)(5) provides "persuasive guidance" in interpreting "domestic support obligation" as defined in 11 U.S.C. § 101(14A)).

[13] *Loper v. Loper (In re Loper)*, 329 B.R. 704, 707 (10th Cir.BAP 2005). *See also, In re Goin,* 808 F.2d 1391, 1392 (10th Cir. 1987)(per curiam).

[14] *See Sampson,* 997 F.2d at 722-723 (stating that "the label attached to an obligation does not control. . . . 'a bankruptcy court *must* look beyond the language of the decree to the intent of the parties *and* the substance of the obligation' to determine whether the obligation is actually in the nature of alimony, maintenance or support.")(citing *Goin,* 808 F.2d at 1392)(emphasis in *Sampson*). *See also, Goss v. Goss (In re Goss),* 131 B.R. 729, 731 (Bankr.D.N.M. 1991)("To determine if the obligation is nondischargeable alimony or support or if it is merely designated as such in the document, the initial inquiry must be to determine the intent of the parties at the time they entered into their agreement.")(citing *In re Yeates,* 807 F.2d 874 (10th Cir. 1986)); *Phegley,* 443 B.R. at 158 (stating that "[a] divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court but is however a starting point for the determination of the award's intended function.")(citations omitted).

financial circumstances of the parties; 2) the language and substance of the marital settlement agreement or divorce decree; 3) the degree to which the obligation enables the receiving spouse to afford daily living expenses; and 4) the parties' future prospects for financial support.[15]

Even when considering the parties' future prospects for financial support, the relevant time period for determining whether a particular obligation constitutes a non-dischargeable domestic support obligation is the time that the obligation arose.[16] Thus, neither the parties' current financial situation (unless it was anticipated at the time of the divorce), nor the fact that the receiving party intends to use the award to pay for current living expenses are relevant to the determination of whether a debt is in the nature of support.[17]

---

[15] *Johnson v. Hamblen (In re Hamblen),* 233 B.R. 430, 434 (Bankr.W.D.Mo. 1999)(stating that "most courts have narrowed the inquiry down to one or more of three main factors: (1) the language and substance of the dissolution decree or separation agreement; (2) the relative financial circumstances at the time of the dissolution; and (3) the degree to which the obligation enables the recipient to maintain daily necessities.")(citations omitted). *See also Goin,* 808 F.2d at 392-1393 (stating that "[s]everal factors are pertinent to the bankruptcy court's determination of whether the debt is support: (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.")(citation omitted).

[16] *See Kessel v. Kessel (In re Kessel),* 261 B.R. 902, 908 (Bankr.E.D.Tex. 2001)(identifying several factors relevant to the determination of the nature of the debt, and observing further that "[t]hese factors are to be considered as of the date of the divorce, not at the time of the dischargeability proceeding.")(citing *In re Martinez,* 230 B.R. 314, 318 (Bankr.W.D.Tex. 1999); *Merrill v. Merrill (In re Merrill),* 252 B.R. 497, 507 (10th Cir. BAP 2000), *aff'd,* 15 Fed.Appx. 766 (10th Cir. 2001)(stating that the test under *Sampson* "is whether at the time of the divorce the Appellee was in a financial situation which would render any court-ordered payments to be viewed as support.")(citing *Sampson,* 997 F.2d at 725); *Pino v. Pino (In re Pino),* 268 B.R. 483, 490 (Bankr.W.D.Tex. 2001)(stating that "the bankruptcy court must examine the circumstances that existed at the time that the obligation was created to ascertain whether it then functioned to provide support to the non-Debtor obligee.")(citations omitted); *Hamblen,* 233 B.R. at 434 (stating that "[t]he characterization of the obligation depends primarily on the function the award was intended to serve at the time it was awarded[,]" (citing *In re Reiff,* 166 B.R. 694, 696 (Bankr.W.D.Mo. 1994)), and that "the parties' intent is determined by the totality of circumstances at the time of the award.")(citing *In re Frye,* 231 B.R. 71, 73 (Bankr.E.D.Mo. 1999)(remaining citation omitted)).

[17] *See Lewis v. Trump (In re Trump),* 309 B.R. 585, 594 (Bankr.D.Kan. 2004)("The parties' current income is not relevant to the determination of dischargeability under § 523(a)(5).")(citation omitted). *See also, Goss,* 131 B.R. at 731 (stating that "[t]he time frame relevant to the Court's determination of the parties' intent is the time of the divorce. An inquiry as to whether the circumstances necessitating support have changed is specifically barred by the Tenth Circuit's holding in *Sylvester v. Sylvester,* 865 F.2d 1164 (10th Cir. 1989).").

8

Denise Comstock submitted an affidavit in support of Plaintiff's Cross-Motion for Summary Judgment.  Kenneth Rodriguez submitted an affidavit in response to Plaintiff's Cross-Motion for Summary Judgment.   Ms. Comstock's affidavit includes averments that she is currently a student teacher, that she expects to continue in that position until June 2011, that she hopes to obtain a permanent teaching position in the fall of 2011 when she becomes a fully certified teacher, that she will use any funds she can recover from the Defendant to pay her debts and living expenses, and that she does not have the financial ability to maintain any recovery as retirement funds.  *See* Comstock Affidavit, ¶¶ 14, 15, and 16.  Mr. Rodriguez's affidavit avers, in part, that the division of the retirement funds was addressed through a settlement conference with Peter Johnstone in December of 2005, that there was never any intent on the part of either party to treat the retirement accounts as support, that there was a separate trial in the state court on the issue of support which gave Ms. Comstock three years to finish her schooling and begin a new career, and that they never discussed using the retirement funds as support.  *See* Affidavit of Kenneth Rodriguez, ¶¶ 4 and 9.

The evidence now before the Court is insufficient to ascertain the mutual intent of the parties regarding the function the debt would serve *as of the time the obligation arose.*   Ms. Comstock's statement that she intends to use any recovery to cover her living expenses fails to focus on the relevant time period for purposes of determining dischargeability.    And while Mr. Rodriguez's affidavit states that there was no intent at the time the parties entered into the Marital Settlement Agreement for the obligation to serve as anything other than a property settlement, it gives little insight into the *shared* intent of the parties.   Because none of the documents Defendant offered in support of his Motion were properly authenticated, the Court cannot rely on the contents of the documents as evidence of the parties' shared intent.

9

Likewise, Plaintiff's claim that the costs and attorney's fees she incurred in defending her right to receive the funds at issue from Defendant constitute a non-dischargeable support obligation cannot be determined based on the parties' current motions.[18]

Based on the foregoing, the Court concludes that neither party is entitled to summary judgment determining whether the debt at issue constitutes a non-dischargeable domestic support obligation under 11 U.S.C. § 523(a)(5). Fact issues relevant to the shared intent of the parties at the time the obligation arose remain. The Court will enter separate orders consistent with this Memorandum Opinion.

*/s/ Robert H. Jacobvitz*
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 27, 2011

COPY TO:

Michael K. Daniels
Attorney for Plaintiff
PO Box 1640
Albuquerque, NM 87103

Don F. Harris
Attorney for Defendant
1120 Pennsylvania St. NE
Albuquerque, NM 87110

---

[18] Plaintiff cites *Brody v. Birdseye (In re Birdseye),* 548 F.2d 321, 325 (10th Cir. 1977) for the proposition that attorney fees awarded in a divorce proceeding are generally in the nature of support, and, consequently, non-dischargeable under 11 U.S.C. § 523(a)(5). Although *Birdseye* acknowledged that the general rule is for attorneys fees awarded in divorce proceedings to be treated as a form of alimony, *Birdseye* is distinguishable inasmuch as it specifically interpreted Connecticut law. Attorneys' fees "take on the character of the obligation for which they were incurred when determining whether an attorney fee judgment is dischargeable." *Dobbs v. Loehrs (In re Loehrs),* 2007 WL 188364, 3 (Bankr.N.D.Okla. Jan. 22, 2007)(citing *Duncan v. Duncan (In re Duncan),* 122 B.R. 434, 435 (Bankr.N.D.Okla. 1991)). Thus, when an award of attorneys' fees is established in connection with child custody or child support matters, such fees are likewise "in the nature of support" for purposes of dischargeability. *Id.* However, there is no presumption that all attorneys' fees awarded in connection with a divorce or with the enforcement of obligations arising from a marital settlement agreement are non-dischargeable; an award of attorney's fees is non-dischargeable only when it functions as support. *See Polishuk v. Polishuk (In re Polishuk),* 243 B.R. 408, 420 (Bankr.N.D.Okla. 1999)(stating that "[t]he test for dischargeability of fee awards is the same as other types of divorce related obligations: (1) the intent behind the creation of the obligation; and (2) whether it actually operates to provide support to the ex-spouse.")(citation omitted).