UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  KENNETH DARYLE RODRIGUEZ                                No. 11-10-14645 JA

      Debtor.

DENISE COMSTOCK f/k/a DENISE RODRIGUEZ,

      Plaintiff/Counter-Defendant,

v.                                                              Adversary No. 10-1206 J

KENNETH DARYLE RODRIGUEZ,

      Defendant/Counter-Claimant,

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Third Motion for Summary Judgment and Memorandum in Support ("Motion for Summary Judgment on Counter-Claim") filed by the Defendant/Counter-Claimant, Kenneth Daryle Rodriguez, by and through his attorney, Don F. Harris.  Plaintiff/Counter-Defendant Denise Comstock, *pro se,* opposes the Motion for Summary Judgment on Counter-Claim.  *See* Response to Debtor's Third Motion for Summary Judgment and Memorandum in Support ("Response")(Docket No. 37).

After consideration of the Motion for Summary Judgment on Counter-Claim, the Response thereto, the evidence and affidavits offered by both parties and in support of their respective positions, and being otherwise sufficiently informed, the Court finds that the Motion for Summary Judgment should be granted, in part.  Plaintiff has failed to raise a genuine issue of material fact regarding the nature of the debt at issue in this adversary proceeding.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Denise Comstock filed this adversary proceeding to determine dischargeability of debt on December 13, 2010. The debt at issue in this adversary proceeding arises from dissolution of marriage proceedings between the parties. The original complaint included non-dischargeability claims under 11 U.S.C. §§ 523(a)(5) and (a)(15); and, alternatively, non-dischargeability claims under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6). *See* Complaint to Determine Dischargeability of Debt (Docket No. 1). Defendant Kenneth Daryle Rodriguez filed a Motion for Summary Judgment ("First Motion for Summary Judgment") on February 22, 2011 requesting, among other things, a determination that debt at issue is non-dischargeable under 11 U.S.C. § 523(a)(15), but not under 11 U.S.C. § 523(a)(5). *See* Docket No. 5. Plaintiff filed a response and cross-motion for summary judgment on March 18, 2011. *See* Plaintiff's Response to Motion for Summary Judgment and Cross Motion for Summary Judgment (Docket No. 6).

The Court denied the cross-motions for summary judgment and entered a Memorandum Opinion. *See* Docket Nos. 8 - 10. In the Memorandum Opinion, the Court found, among other things, that 1) the copies of the Marital Settlement Agreement and Final Decree of Dissolution of Marriage with Reservation of Jurisdiction offered by the Defendant in support of his motion for summary judgment were not properly authenticated; 2) Plaintiff's Response to Motion for Summary Judgment and Cross Motion for Summary Judgment raised factual issues not pleaded in her original complaint; and 3) that genuine issues of material fact precluded summary judgment on the issue of whether the debt at issue constitutes a non-dischargeable domestic support obligation under 11 U.S.C. § 523(a)(5). *See* Memorandum Opinion (Docket No. 8). Plaintiff was given an opportunity to amend her complaint. *See* Order Denying Plaintiff's Cross-

2

Motion for Summary Judgment and Allowing Plaintiff to File an Amended Complaint (Docket No. 10).

On June 15, 2011, Plaintiff filed a motion to dismiss this adversary proceeding. *See* Docket No. 11. Defendant then filed a second motion for summary judgment on June 24, 2011 *See* Docket No. 13. Following a preliminary hearing on the Plaintiff's motion to dismiss, held July 11, 2011, the Court gave Defendant an opportunity to file a counterclaim on or before July 21, 2011. *See* Order Arising from Preliminary Hearing on Plaintiff's Motion to Dismiss (Docket No. 19). The Court then dismissed Plaintiff's complaint with prejudice after Defendant filed his counterclaim.

Defendant's Counterclaim for Declaratory Relief and for Return of Preference ("Counterclaim")(Docket No. 16), filed July 19, 2011, includes the following requests for relief: 1) a determination that the debt at issue relating to the disbursement of retirement funds is not a domestic support obligation subject to 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 507(a)(1), but rather a non-dischargeable debt under 11 U.S.C. § 523(a)(15); and 2) recovery of a $15,000 payment to the Plaintiff as a preferential transfer under 11 U.S.C. § 547.

On August 22, 2011, counsel for Plaintiff Denise Comstock was permitted to withdraw as counsel of record for Plaintiff. *See* Docket No. 20. Following the withdrawal of Plaintiff's counsel, the parties attended mediation, which was not successful. Defendant filed the Motion for Summary Judgment on Counter-Claim on October 22, 2011. *See* Docket No. 29. Plaintiff filed her response to the Motion for Summary Judgment on Counter-Claim on November 23, 2011, and Defendant filed a reply on December 13, 2011. *See* Docket Nos. 37 and 35.

3

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. In considering a motion for summary judgment, the Court must "'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 796 (10th Cir. 1995)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## MATTERS FOR DETERMINATION ON SUMMARY JUDGMENT

Plaintiff's Response identifies the following nine issues for determination: 1) whether tuition for the education of the parties' children at the Albuquerque Academy is non-dischargeable support; 2) whether the misappropriated IRA debt is non-dischargeable as a domestic support obligation; 3) whether the misappropriated IRA debt is non-dischargeable because it arises from fraud and deceit; 4) whether the misappropriated IRA debt is non-dischargeable because it was obtained through use of a statement of writing that is materially false or made with intent to deceive; 5) whether the misappropriated IRA debt is non-dischargeable because it was provided in a final judgment in a United States Court; 6) whether the misappropriated IRA debt is non-dischargeable because it was incurred in connection with a

4

divorce decree; 7) whether the debt results from a judgment, order, or other decree entered in any Federal or State judicial or administrative proceeding, any settlement agreement entered into by the Debtor, or any court order for any damages, fine, penalty, citation or restitutionary payment, attorney fee, cost or other payment owed by the Debtor; 8) whether the $15,000 payment the Plaintiff received toward that debt three days prior to the bankruptcy being filed, as ordered by the State District Court as a partial payment arising from the misappropriation of the Plaintiff's retirement accounts, was a preference; and 9) whether the Plaintiff can continue to collect prejudgment interest until her funds are fully returned as ordered in a judgment by State District Court on December 21, 2009. *See* Response, pp. 1 – 2. Because the Plaintiff's Complaint was dismissed with prejudice, the Court may consider only the issues raised in the Counterclaim. Plaintiff's identified issue numbers $1^1$, 3 through 5, or $7^2$ were not raised in the Counterclaim. Therefore, it is not appropriate for the Court to consider those issues.

The issues contained in the Defendant's Counterclaim to be adjudicated in this adversary proceeding are: 1) whether the debt arising from the Defendant's disbursement of funds from certain retirement accounts contrary to the terms of the parties' marital settlement agreement constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(5) or 11 U.S.C. § 523(a)(15); and 2) whether Defendant's payment of $15,000 to Plaintiff within 90 days of the filing of the Defendant's voluntary petition under Chapter 11 of the bankruptcy case constitutes an avoidable preference under 11 U.S.C. § 547. Finally, because both parties address the issue of whether Plaintiff is entitled to pre-judgment interest on her claim represented by the July 12, 2010

---

[1] The only debt relating to the non-dischargeability claim raised in Defendant's counter claim is the debt arising from Defendant's disbursement of funds from the retirement account. The obligation to pay tuition at the Albuquerque Academy (which Plaintiff contends Defendant failed to do, giving rise to a debt in excess of $29,000) and the nature of that obligation, was not included in the Defendant's Counter-claim. Consequently, the Court will not address that issue as part of this adversary proceeding.

[2] Plaintiff's issue numbers 2 and 6 relate to the determination of whether the debt arising from the Defendant's disbursement of the funds from the retirement account is in the nature of support, and Plaintiff's issue 8 is Defendant's preference claim.

judgment, the Court will resolve this issue even though it was not raised in Defendant's counterclaim.[3]

FACTS NOT SUBJECT TO GENUINE DISPUTE

The following material facts are not subject to genuine dispute: \

1. Plaintiff and Defendant were married in 1995.

2. In 2003, a Plaintiff filed a Petition for Dissolution of Marriage in the Second Judicial District Court, State of New Mexico, County of Bernalillo in Case No. D-202-DM-2003-04507 ("State Court Dissolution Action.").

3. In connection with the State Court Dissolution Action, the parties participated in settlement facilitation and reached a mediated agreement on December 21, 2005 "in relation to the division of all the property, the debts, with the exception of Dr. Rodriguez's credit card debt; retirement and insurance policies." *See* Defendant's Statement of Undisputed Facts, ¶ 9; Plaintiff's Response, ¶ 8; Court's Findings of Fact and Conclusions of Law entered in the State Court Dissolution Action, ¶ 6 - Exhibit C. Both parties were represented by counsel in the settlement facilitation.

4. The Report and Recommendations of the Special Master filed by Peter H. Johnstone in the State Court Dissolution Action following the settlement facilitation between the parties, reported that "settlement was reached on all issues except for child support issues, spousal support issues and custody/timesharing issues" and that "[e]ach party

---

[3] In considering a motion for summary judgment, the Court "may evaluate the pleadings both in terms of their content at the time of their submission and as they might be amended at some later date." 10A Wright, Miller and Kane, Federal Practice and Procedure, §2722 at 368 (1998). *Cf. Redmond v. Ellis County Abstract & Title Co. (In re Liberty Livestock Co.),* 198 B.R. 365, 376 (Bankr.D.Kan. 1996)(noting that, absent prejudice, an affirmative defense may be raised by a party for the first time on summary judgment)(citing *In re National Lumber and Supply, Inc.,* 184 B.R. 74, 79 (Bankr.9th Cir. 1995)); *In re Zweibon,* 565 F.2d 742, 748 n. 20 (D.C. Cir. 1977)(stating that "it is now settled that the process of amendment may be initiated by presentation of an issue for the first time in a motion for summary judgment.")(citations omitted).

gets one-half (1/2) of all retirement accounts." *See* Defendant's Statement of Undisputed Facts, ¶ 10; Plaintiff's Response, ¶ 3; Report and Recommendations of the Special Master p.1 and p. 4, ¶ G. – Exhibit D.

5. The division of property contained in the mediated agreement was incorporated into the Partial Marital Settlement Agreement entered into by the parties and filed in the Second Judicial District Court, State of New Mexico, County of Bernalillo in Case No. D-202-DM-2003-04507 ("State Court Action.") on April 14, 2008. *See* Defendant's Statement of Undisputed Material Facts, ¶ 9; Plaintiff's Response, ¶ 3; and Partial Marital Settlement Agreement - Exhibit A.

6. The twenty-page Partial Marital Settlement Agreement is detailed and addresses topics that include: Article II: Child Custody and Support; Article III: Property and Debts; Article VI: Equalization; Article VII: Interim Support; Article VIII: Temporary Support; and Article IX: Spousal Support.

7. Article III of the Partial Marital Settlement Agreement in a section entitled "Division of Property" provided that Plaintiff and Defendant each would receive one-half of all of the parties' retirement accounts. *See* Partial Marital Settlement Agreement, Article III, A. Division of Property, 1.b. and 2.b., pp. 4 and 5 – Exhibit A.

8. The Partial Marital Settlement Agreement awarded Plaintiff an equalization payment in the amount of $145,000. *See* Partial Marital Settlement Agreement, Article VI. Equalization.

9. The Partial Marital Settlement Agreement reserved the issue of spousal support and child support for later determination by the state court. *See* Partial Marital Settlement

7

Agreement, Article IX: Spousal Support and Article XIII: Reserved Issues - Exhibit A.

10. The state court entered a Final Decree of Dissolution of Marriage with Reservation of Jurisdiction ("Final Decree") in the State Court Dissolution Action on April 14, 2008 following a trial held June 14, 15, and 16, 2006 in which both parties were represented by counsel. *See* Exhibit A. The Final Decree contained findings of fact and conclusions of law made by the state court. *Id.*

11. The Final Decree incorporated the Partial Marital Settlement Agreement by reference. *Id.*

12. The Final Decree addressed child support and alimony. *Id.*

13. The Final Decree awarded alimony pursuant to New Mexico statutes relating to spousal support, N.M.S.A. 1978 § 40-4-7(E)(1 – 10). Defendant's Statement of Undisputed Facts, ¶ 12; Plaintiff's Response, ¶ 5; Final Decree, Article III.

14. The Final Decree awarded child support. Final Decree, Article II.

15. The awards of alimony and child support in the Final Decree did not address division of the Retirement Account (*See* Final Decree, Articles II and III) as the division of the Retirement Funds had been provided for in the Partial Marital Settlement Agreement.

16. No Qualified Domestic Relations Orders (QDROs) were prepared dividing the retirement assets.

17. On December 21, 2009, the state court entered an Order (the "Order Directing Repayment of Retirement Funds") determining that Defendant cashed in various IRAs and retirement funds that were owned one-half by Plaintiff, and awarding

8

Plaintiff judgment in the amount of $61,935.00, plus interest at the statutory rate of 8.75% from the time it was cashed in April of 2007. *See* Exhibit B.

18. On July 12, 2010, the state court entered an Order (the "Enforcement Order") finding Defendant in contempt of prior orders of issued by the state court, including the Order Directing Repayment of Retirement Funds. The Enforcement Order awarded Plaintiff judgment against Defendant in the amount of "$48,092.19 for monies owed pursuant to the prior Order of the Court on December 21, 2009 plus attorney's fees of $1,282.50, plus 8.75% from December 21, 2009 for a total judgment of $50,454.75." *See* Exhibit I.

19. Defendant did not make all the payments required under the Enforcement Order. Consequently, a bench warrant was issued for his arrest and Defendant was incarcerated.

20. Defendant entered into a stipulated order with Plaintiff that would result in his release from jail by promising immediate payment to Plaintiff of $15,000. *See* Stipulated Order Resolving Emergency Motion to Set Terms and Order Release from Custody, attached to Second Affidavit of Kenneth Daryle Rodriguez.

21. On September 10, 2011, Plaintiff was paid $15,000 with funds provided by Defendant's parents.

22. Three days later, Defendant filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 13, 2011.

## CONCLUSIONS OF LAW

### A. Whether the Debt Constitutes A Domestic Support Obligation

Whether a debt is in the nature of support is made according to federal bankruptcy law, not state law.[4] In *Sampson v. Sampson (In re Sampson),* 997 F.2d 717 (10th Cir. 1993), the Tenth Circuit conducted a two-part inquiry to determine whether an obligation constituted a non-dischargeable support obligation: 1) what was the parties' shared intent regarding the nature of the obligation; and 2) what was the substance of the obligation. *Sampson,* 997 F.2d at 723. In ascertaining the shared intent of the parties, the labels ascribed to a particular debt in a marital settlement agreement or divorce decree are not determinative.[5] In ascertaining the substance of the obligation, "[t]he critical question . . . is '"the function served by the obligation at the time of the divorce."'" *Sampson,* 997 F.2d at 725-726 (quoting *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 763 (3d Cir. 1990)). Factors used to determine the true nature of an obligation include: 1) the relative financial circumstances of the parties; 2) the language and substance of the marital settlement agreement or divorce decree; 3) the degree to which the obligation enables the receiving spouse to afford daily living expenses; and 4) the parties' future prospects for financial support.[6] The party asserting that the obligation at issue is non-dischargeable under

---

[4] *Loper v. Loper (In re Loper)*, 329 B.R. 704, 707 (10th Cir.BAP 2005). *See also, In re Goin,* 808 F.2d 1391, 1392 (10th Cir. 1987)(per curiam).

[5] *See Sampson,* 997 F.2d at 722-723 (stating that "the label attached to an obligation does not control. . . . 'a bankruptcy court *must* look beyond the language of the decree to the intent of the parties *and* the substance of the obligation' to determine whether the obligation is actually in the nature of alimony, maintenance or support.")(citing *Goin,* 808 F.2d at 1392)(emphasis in *Sampson*). *See also, Goss v. Goss (In re Goss),* 131 B.R. 729, 731 (Bankr.D.N.M. 1991)("To determine if the obligation is nondischargeable alimony or support or if it is merely designated as such in the document, the initial inquiry must be to determine the intent of the parties at the time they entered into their agreement.")(citing *In re Yeates,* 807 F.2d 874 (10th Cir. 1986)); *Phegley v. Phegley (In re Phegley),* 443 B.R. 154, 158 (9th Cir. BAP 2011)(stating that "[a] divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court but is however a starting point for the determination of the award's intended function.")(citations omitted).

[6] *Johnson v. Hamblen (In re Hamblen),* 233 B.R. 430, 434 (Bankr.W.D.Mo. 1999)(stating that "most courts have narrowed the inquiry down to one or more of three main factors: (1) the language and substance of the dissolution decree or separation agreement; (2) the relative financial circumstances at the time of the dissolution; and (3) the degree to which the obligation enables the recipient to maintain daily necessities.")(citations omitted). *See also*

10

11 U.S.C. § 523(a)(5) as a debt that is actually in the nature of support bears the burden of proof to establish the true nature of the debt by a preponderance of the evidence.[7]

        i)        Shared Intent of the Parties

Although the labels used by the parties to describe the obligation are not determinative, even if such language is unambiguous, the language used by the parties in a written marital settlement agreement is persuasive evidence of the parties' shared intent. *Sampson,* 997 F.2d at 723 (citing *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir. 1986)). This is particularly true where, as here, the marital settlement agreement resulted from a settlement facilitation in which both spouses were represented by counsel, the twenty-page Partial Marital Settlement Agreement resulting from the settlement facilitation is quite detailed, and the state court itself determined and awarded alimony and child support after a lengthy evidentiary trial. The Partial Marital Settlement Agreement provided that Plaintiff and Defendant each would receive one-half of the retirement accounts under a section of the agreement entitled Division of Property. The language in the Partial Marital Settlement Agreement designating division of the retirement funds as part of the parties' division of the marital property is strong evidence of the parties' shared intent when considered in the context of the circumstances surrounding the negotiation of the agreement, the detailed nature of the agreement, the parties' express reservation of child support and alimony issues for the state court judge, and the state court's award of alimony and child support following a lengthy trial.

---

*Goin,* 808 F.2d at 1392-1393 (stating that "[s]everal factors are pertinent to the bankruptcy court's determination of whether the debt is support: (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support.")(citation omitted).
[7]*Young v. Butler (In re Butler),* 308 B.R. 1, 21 (Bankr.S.D.N.Y.2004)(citations omitted).

11

The Affidavit of Kenneth Daryle Rodriguez dated April 11, 2011 ("First Rodriquez Affidavit") states that he and Plaintiff attended a settlement conference that resulted in a settlement of property division issues, including the division of the retirement accounts, that the court held a separate trial on the issue of support as part of the State Court Dissolution Action, and that as part of that separate trial the parties never discussed using the retirement funds as support. *See* First Rodriguez Affidavit, ¶¶ 4 and 9. The Affidavit of Denise Comstock dated March 16, 2011 ("First Comstock Affidavit") avers that she will use the funds she recovers to pay her debts and living expenses. *See* Docket No. 29, attachment 9, ¶ 16. The Affidavit of Denise Comstock dated November 23, 2011 ("Second Comstock Affidavit") again avers that the retirement accounts that were awarded to her in connection with the dissolution of marriage proceedings are an essential part of her support. *See* Second Comstock Affidavit, ¶ 8 – Docket No. 38. The Second Comstock Affidavit also states that the tuition for the children's education is a part of their support. *Id.* ¶ 5. These averments contained in the First Comstock Affidavit and the Second Comstock Affidavit say nothing about whether the parties together (or even whether Ms. Comstock independently) intended the division of the retirement accounts to function as support *at the time of the* dissolution proceedings. Plaintiff's contention that she now intends to use funds to pay for living expenses is insufficient to create a genuine issue of material fact regarding the shared intent of the spouses for the obligation to serve as support at the time of the divorce.[8]

---

[8] The parties' shared intent must be "determined by the totality of the circumstances at the time of the award." *Hamblen,* 233 B.R. at 434 (citing *In re Frye,* 231 B.R. 71, 73 (Bankr.E.D.Mo. 1999)). In fact, the parties' current income is not relevant to the determination of their shared intent at the time the obligation arose. ). *See Goss,* 131 B.R. at 731 (stating that "[t]he time frame relevant to the Court's determination of the parties' intent is the time of the divorce. An inquiry as to whether the circumstances necessitating support have changed is specifically barred by the Tenth Circuit's holding in *Sylvester v. Sylvester,* 865 F.2d 1164 (10th Cir. 1989)."). *See also, See Lewis v. Trump (In re Trump),* 309 B.R. 585, 594 (Bankr.D.Kan. 2004)("The parties' current income is not relevant to the determination of dischargeability under § 523(a)(5).")(citation omitted).

ii) <u>Substance of the Obligation</u>

The fact that Plaintiff currently may need the retirement funds at issue to pay for the education expenses of her children and for living expenses and intends to use the funds for these types of expenses does not convert the debt into a domestic support obligation. As explained above, to constitute a domestic support obligation, there must first be evidence that the parties intended the obligation to function as support at the time the obligation arose, and second, that the obligation in fact functions as support. *Sampson,* 997 F.2d at 723.[9] Factors relevant to the determination of the nature of the obligation also support a finding that the debt at issue is a property division. First, the Partial Marital Settlement Agreement expressly reserved the issue of support for later determination, and, in fact, both spousal support and child support were awarded to Plaintiff in the Final Decree. Second, the Partial Marital Settlement Agreement did not provide that Defendant's obligation regarding the retirement funds would terminate upon death or remarriage. The retirement funds were simply divided in half between the parties pursuant to the Partial Marital Settlement Agreement. Such an arrangement is consistent with a property settlement.[10] The Court, therefore, finds and concludes that the Defendants

---

[9] *See also Moberly v. Johnston (In re Moberly),* 266 B.R. 187, 189 (Bankr.N.D.Cal. 2001)("In order to determine whether a debtor's obligation is in the nature of support, the court must ascertain the intention of the parties at the time they entered in their agreement.")(citing *In re Combs,* 101 B.R. 609, 615 (9th Cir. BAP 1989)).

[10] *See Sampson,* 997 F.2d at 723 (noting that a provision in an agreement for the obligation to survive remarriage is "indicative of a property settlement.")(citing *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir. 1989)(per curiam)(remaining citation omitted)); *Bailey v. Bailey (In re Bailey),* 285 B.R. 15, 20 (Bankr.N.D.Okla. 2002)(obligation that does not terminate upon death or remarriage is indicative of a property settlement); *Butler,* 308 B.R. at 21 ("the characterization given to the award by the divorce decree and the context in with the disputed provisions appear" is one factor relevant to the determination of the true nature of the obligation); *Gatliff v. Gatliff (In re Gatliff),* 266 B.R. 381, 387 (Bankr.N.D.Ill. 2000)(listing various factors relevant to the consideration of whether an obligation constitutes alimony, maintenance, or support, including whether the obligation is payable in a lump sum (property settlement), or in installments over a period of time (support)). *See also, In re Korwin,* 379 B.R. 80, 85 (Bankr.W.D.Pa. 2007)(finding within the context of a debtor's claim of exemption that the asset at issue was intended as a property settlement, and did not, therefore, constitute exemptible alimony or support when there was an "explicit, separate provision for alimony" in the parties' agreement). If the marital settlement agreement fails to provide explicitly for support, the court may presume that the award was intended as support even if labeled as a property settlement if it appears that the spouse needs support. *Bailey,* 285 B.R. at 19-20 (quoting *Yeates,* 807 F.2d at 878). Here, to the contrary, both spousal support and child support were addressed separately.

13

obligations under the division of retirement funds provisions of the Partial Marital Settlement Agreement represent obligations in connection with the division of marital property, are not in the nature of alimony, maintenance, or support, and are not domestic support obligations.

The Order Directing Repayment of Retirement Funds and the Enforcement Order that give rise to the obligation at issue in this adversary proceeding were entered as a result of Defendant's use of the retirement accounts contrary to the Partial Marital Settlement Agreement. Because the division of the retirement accounts is part of the property settlement, the debt represented by the Order Directing Repayment of Retirement Funds and the Enforcement Order likewise does not constitute a domestic support obligation. The facts not subject to genuine dispute establish that Defendant's debt to Plaintiff arising from Defendant's misuse of the retirement funds is a debt arising as part of a property settlement, and is not a domestic support obligation. The Court will, therefore, grant Defendant's motion for summary judgment on this claim. The debt is, however, nevertheless non-dischargeable under 11 U.S.C. § 523(a)(15) because the debt was incurred by the debtor in connection with an order issued in the State Court Dissolution Action, is owed to a former spouse, and is not in the nature of alimony, maintenance, or support.

    B.  <u>Whether the Pre-petition payment to Plaintiff of $15,000 Constitutes an Avoidable Preferential Transfer</u>

Defendant asserts that a $15,000 payment made to Plaintiff shortly before Defendant filed his voluntary petition under Chapter 11 of the Bankruptcy Code constitutes a recoverable preferential transfer. Preferential transfers are governed by 11 U.S.C. § 547(b), which provides:

> Except as provided in subsection (c) and (i)[11], the trustee[12] may avoid any transfer of an interest of the debtor in property –

---

[11] Subsections (c) and (i) are inapplicable here.
[12] A chapter 11 debtor in possession has the powers of a trustee, and can assert a preferential transfer claim under 11 U.S.C. § 547. *See* 11 U.S.C. § 1107(a) ("a debtor in possession shall have all of the rights . . . of a trustee serving in

14

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made –
> (3) made while the debtor was insolvent;
> (4) made –
>   (A) on or within 90 days before the date of the filing of the petition; or
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables the creditor to receive more than such creditor would receive if—
>   (A) the case were a case under chapter 7 of this title;
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The debtor in possession has the burden of establishing all elements necessary to establish a preference under 11 U.S.C. § 547(b). *See* 11 U.S.C. § 547(g).

Plaintiff challenges whether the transfer of the $15,000 to her within the 90-day preference period was a transfer of an "interest of the debtor in property" within the meaning of 11 U.S.C. § 547(b). The Bankruptcy Code does not define "interest of the debtor in property."[13] For purposes of determining whether the property transferred constitutes an interest of the debtor in property, the Court is guided by the definition of property of the estate as defined in 11 U.S.C. § 541(a). *Moses,* 256 B.R. at 645.[14] Property of the estate is very broadly defined in 11 U.S.C. § 541.[15] It includes all of the debtor's legal and equitable property interests as of the petition date. 11 U.S.C. § 541(a). And though state law defines property interests for

---

a case under this chapter."). *See also Double J. Cattle Co. v. Geis (In re Double J Cattle Co.),* 203 B.R. 484, 487 (Bankr.D.Wyo. 1995)(acknowledging that "[t]he Bankruptcy Code also grants the trustee (debtor in possession) the power to avoid certain preferential transfers pursuant to § 547.").

[13] *Parks v. FIA Card Services, N.A. (In re Marshall),* 550 F.3d 1251, 1254 (10th Cir. 2008); *In re Kemp Pacific Fisheries, Inc.,* 16 F.3d 313, 315 (9th Cir. 1994); *Manchester v. First Bank & Trust Co. (In re Moses),* 256 B.R. 641. 645)(10th Cir. BAP 2000)(observing that "[t]he phrase 'transfer of an interest of the debtor in property' in § 547(b) is not expressly defined in the Bankruptcy Code. . .")(citations omitted).

[14] *See also, Begier v. IRS,* 496 U.S. 53, 58-59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)("For guidance [in examining preferential transfers], then, we must turn to § 541, which delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'").

[15] *Marshall,* 550 F.3d at 1255 (observing that "'[t]he scope of [§] 541 is broad and should be generously construed . . .'")(quoting *Baer v. Jones (In re Montgomery),* 224 F.3d 1193, 1194 (10th Cir. 2000)(quotations omitted)).

15

purposes of bankruptcy[16], the Court "'must still look to federal bankruptcy law to resolve' the extent to which that interest is property of the estate."[17]

The primary aim of 11 U.S.C. § 547 is to preserve property that would have been property of the debtor's bankruptcy estate available for distribution to creditors had the transfer not occurred.[18] In evaluating whether the debtor had a legal or equitable interest in the transferred property for purposes of applying 11 U.S.C. § 547, some courts employ a dominion and control test that examines the degree to which the debtor exercised dominion or control over the transferred property.[19] If the debtor exercised dominion or control over the transferred property, the transfer is a transfer of "an interest of the debtor in property" recoverable under 11 U.S.C. § 547(b).[20] A pre-petition loan of funds to the debtor is generally considered "an interest of the debtor in property" for purposes of 11 U.S.C. § 547(b).[21]

> 'When a debtor uses the funds of a third party to pay an obligation of the debtor the court must look to the source of the control over the disposition of the funds in order to determine whether a preference exists. If the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of the third party whose funds are being used in partial payment of the debt, then the payments made by the debtor constitute a preferential transfer.'

---

[16] *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)("Property interests are created and defined by state law.").
[17] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002)(quoting *Rine & Rine Auctioneers, Inc. v. Myers (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 857 (8th Cir. 1996)).

[18] *See Begier v. IRS,* 496 U.S. at 58 ("the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate- [i.e.] the property available to distribution to creditors . . . ); *Bailey v. Hazen (In re Ogden),* 243 B.R. 104, 112-113 (10th Cir. BAP 2000)(noting "that the purpose of § 547 is to treat creditors similarly during the preference period" which is why "through § 547 the trustee can recover property that would have been part of the estate but for the preferential transfer.")(citations omitted).
[19] *See Marshall,* 550 B.3d at 1255 (citing, as examples of this approach, *McLemore v. Third Nat'l Bank in Nashville (In re Montgomery),* 983 F.2d 1389, 1395 (6th Cir. 1993) and *In re Smith*, 966 F.2d 1527, 1531 (7th Cir. 1992)). Other courts focus on whether the transfer caused a diminution of the bankruptcy estate. *Id. See also, Moses,* 256 B.R. at 645 (stating that "'the fundamental inquiry under §547(b) will be whether the Debtor had a legal or equitable interest in the property [transferred] such that the transfer at issue diminished or depleted the Debtor's estate.'")(quoting *Ogden,* 243 B.R. at 113)(remaining citations omitted).
[20] *Marshall,* 550 B.R. at 1255.
[21] *See Kemp Pacific Fisheries,* 16 F.3d at 316 ("Generally, 'courts have held that transfers by a debtor of borrowed funds constitute transfers of the debtor's property.'")(quoting *In re Smith,* 966 F.2d 1527, 1533 (7th Cir. 1992)(remaining citations omitted)).

16

> *Miller v. Martin (In re Goss),* 378 B.R. 320, 327 (Bankr.E.D.Okla. 2007)(quoting *In re Jaggers,* 48 B.R.33, 36-37 (Bankr.W.D.Tex. 1985)).

Here, the affidavit testimony addressing the $15,000 creates an issue of fact as to whether the property would have been property of the Defendant's bankruptcy estate had it not been transferred, and, consequently, whether the transfer was an "interest of the debtor in property" within the meaning of 11 U.S.C. § 547(b). The Second Rodriguez Affidavit includes the following averment: "I made a payment of $15,000 on September 10, 2011 from money that my parents lent me." *See* Second Rodriguez Affidavit, ¶ 10. The Second Rodriguez Affidavit also includes the following statement: "My attorney negotiated an order allowing for my release from custody upon the immediate payment of $15,000 toward the debt on September 10, 2010." *Id.* at ¶ 7. The Second Comstock Affidavit states that on information and belief, "the $15,000 payment received by me was not paid by the Debtor, but rather by his father from his father's funds." If Defendant's father made a direct payment of $15,000 to Plaintiff from his own funds without conveying any interest in those funds to the Defendant, the $15,000 would not have been property of the Defendant's bankruptcy estate under 11 U.S.C. § 541 had the transfer not occurred, and, consequently, the transfer would not have been an "interest of the debtor in property" for purposes of 11 U.S.C. § 547(b). It is not possible for the Court to determine based on the evidence presented on summary judgment whether the $15,000 was first transferred to the Defendant (as a loan) and then paid to Plaintiff, or whether Defendant's father made a direct payment of $15,000 to Plaintiff without conveying any interest in the funds to the Defendant.[22] This genuine issue of material fact prevents the Court from granting summary judgment on this claim.

---

[22] Plaintiff attached a copy of a cashier's check made payable to Denise Rael in the amount of $15,000 dated September 9, 2010. *See* Exhibit H. An unauthenticated copy of the check cannot be considered by the Court in connection with a summary judgment motion.

C. Whether the Plaintiff is Entitled to Pre-judgment Interest

Plaintiff asserts that she is entitled to pre-judgment interest on a judgment issued by the state court from April 2007 until the debt is paid in full in accordance with the Order Directing Repayment of Retirement Funds. She reasons further that because the Enforcement Order is based on the Order Directing Repayment of Retirement Funds, pre-judgment interest continues to accrue. Defendant counters that the Enforcement Order quantified the total amount of the judgment, including the amount of the pre-judgment interest she was entitled to receive, as of July 12, 2010. This Court agrees.

The Enforcement Order includes a finding that Defendant was "in violation of prior Orders of the Court." *See* Enforcement Order, ¶ 1. The Enforcement Judgment then awarded Plaintiff "$48,092.19 for monies owed pursuant to the prior . . . [Order Directing Repayment of Retirement Funds] on December 21, 2009 plus attorney's fees of $1,282.50, plus 8.75% from December 21, 2009 for a total judgment of $50,454.75." The Enforcement Order thus included all amounts due under the prior Order Directing Repayment of Retirement Funds, including any unpaid prejudgment interest awarded under the prior order owed as of the date of the Enforcement Order. The Enforcement Order did not separately provide for payment of any pre-judgment interest awarded under the prior order. Further, the Enforcement Order is a final order that awarded a total judgment of $50,454.75 as of the date of that order. Once a judgment is final, pre-judgment interest ceases to accrue; post-judgment interest runs from the date of the judgment.[23] The Court, therefore, finds that Plaintiff is not entitled to pre-judgment interest

---

[23] *See Wilson v. Union Pac. R.R.Co.,* 56 F.3d 1226, 1233 (10th Cir. 1995)(holding that post-judgment interest "should be calculated from the date that a plaintiff's damages are 'meaningfully ascertained and included in a final, appealable judgment.'")(quoting *MidAmerica Fed. Sav. & Loan v. Shearson/American Express, Inc.,* 962 F.2d 1470, 1476 (10th Cir. 1992)(remaining citations omitted); *Youngs v. American Nutrition, Inc.,* 537 F.3d 1135, 1146 (10th Cir. 2008)(relying on the clear language of 28 U.S.C. § 1961(a) which sets the statutory federal rate of post-judgment interest, and finding that because the post-judgment interest goes into effect on the date of entry of the judgment, the District Court properly ended pre-judgment interest on the date of the original judgment rather than

18

from April of 2007 in addition to the amounts awarded by the Enforcement Order; the judgment amount is fixed by the Enforcement Order in the amount of $50,454.75 as of July 12, 2010. Whether Plaintiff is entitled to post-judgment interest on that amount is not an issue now before the Court.

## CONCLUSION

Based on the foregoing, the Court concludes that Defendant is entitled to summary judgment determining that Defendant's obligation relating to the division of retirement accounts that ultimately resulted in the entry of the Enforcement Order giving rise to the debt at issue in this adversary proceeding does not constitute a domestic support obligation within the meaning of 11 U.S.C. § 523(a)(5). The obligation is, however, a non-dischargeable debt under 11 U.S.C. § 523(a)(15). Genuine issues of material fact preclude summary judgment on Defendant's claim to recover a payment of $15,000 to Plaintiff as a preferential transfer under 11 U.S.C. § 547(b). Finally, Plaintiff is not entitled to continue to collect pre-judgment interest on the debt based on the Order Directing Repayment of Retirement Funds or the Enforcement Order except to the extent accrued pre-judgment interest is included in the $50,454.75 judgment contained in the Enforcement Order. An order consistent with this Memorandum Opinion will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   January 20, 2012

---

the later date of the amended judgment). *Cf. Smith v. City of Albuquerque,* 105 N.M. 125, 126, 729 P.2d 1379, 1382 (Ct.App. 1986)(finding that where the trial court's final judgment did not include an express provision for prejudgment interest, claimant was not entitled to an award of prejudgment interest).

COPY TO:

**Denise M. Comstock**
Plaintiff
2037 Calle Pajaro Azul NW
Albuquerque, NM 87102

**Don F Harris**
Attorney for Defendant/Counter-Claimant
1120 Pennsylvania St, NE
Albuquerque, NM 87110